UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DCCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: FEB 0 8 2017
```

Michael A. Lynch *et al.*,

      Plaintiffs,

–v–

Sreelekha Amoruso, *et al.*,

      Defendants.

16-cv-1270 (AJN)

ORDER

ALISON J. NATHAN, District Judge:

  Plaintiffs Michael Lynch and Lisa Scarola, acting *pro se*, have filed a complaint alleging that various defendants engaged in a RICO conspiracy to swindle Carlton Lynch — Michael's father and Lisa's uncle — out of his home and other property. They also assert that the defendants violated Carlton Lynch's civil rights. Before the Court are two motions to dismiss, one brought by Defendants Sreelekha Chakrabarty Amoruso and Amoruso & Amoruso, LLP, and another brought by Defendants DeMille Halliburton, Camille Halliburton Huang, and Marshall Posner. Dkt Nos. 50, 58. For the following reasons, the Court grants the motions to dismiss.

I.  **Facts**

  The following facts are taken from the amended complaint and are assumed to be true for purposes of this motion.

  The allegations in this case surround the disposition of property owned by a man named Carlton Lynch. Carlton[1] was the father of Plaintiff Michael Lynch and the uncle of Plaintiff Lisa

---

[1] Because several of the relevant people in this case have the same last name, the Court will occasionally refer to some of them by their first name only.

Scarola. *See* Amend. Compl. at 2, 7 (Dkt No. 42). Carlton was married to Camille Lynch, Michael's stepmother. *See* Amend. Compl. at 2, 4. Prior to his death in 2015, Carlton's assets consisted of a home located in New York and personal property equaling approximately $200,000. *See* Amend. Compl. at 2, 7.

The defendants in this case are either relatives of Carlton or attorneys involved in the disposition of Carlton's property. Defendants Halliburton and Huang are Camille's children and Carlton's stepchildren. Amend. Compl. at 3-8; Ex. A (Dkt No. 42-1). Defendant Amoruso is an attorney at Defendant Amoruso & Amoruso, LLP, the law firm that helped Carlton convey his home to his wife before his death. Amend. Compl. at 2-3. Defendant Michael Posner is an estate attorney who represented the Halliburton children during the execution of Carlton's will. Amend. Compl. at 8.

Plaintiffs allege that these defendants took a variety of actions to "defraud" Carlton out of his property. Amend. Compl. at 2. Many of the allegations in the complaint surround Carlton's home in New York. At some point before he died, Carlton conveyed this home to his wife, Camille. Amend. Compl. at 2-3. The Amoruso Defendants helped facilitate this transfer, including by suggesting the conveyance in the first place and notarizing the deed. Amend. Compl. at 2-3. According to Plaintiffs' allegations, Carlton Lynch did not actually want to convey his home. Amend. Compl. at 4; Opp. at 2 (Dkt No. 56). Rather, the defendants allegedly took advantage of Carlton's "severe Alzheimer's" by "illegally notarizing" the deed to Carlton's house and then "mailing the illegally notarized deed" to an address not specified in the complaint. Amend. Compl. at 2-3. Defendant Huang allegedly furthered the conspiracy to illegally convey Carlton's home purportedly by making "numerous . . . false statements" in order to hide the forged transfer. Amend. Compl. at 6. The amended complaint alleges that, as of

2

February 2013, Michael "had full rights to his father's property in the event that Carlton Lynch's wife died." Amend. Compl. at 2. In other words, the amended complaint alleges that if the illegal conveyance had not occurred, Michael would have received Carlton's home.

The amended complaint further alleges that the defendants stole additional property from Carlton. Taking advantage of Carlton's "severe Alzheimer's" and Camille's "dementia," Defendants purportedly stole "all of Carlton Lynch's money." Amend. Compl. at 2-3. According to the allegations, Defendants Halliburton and Huang stole the money, and the Amoruso Defendants then hid it by creating "various trusts." Amend. Compl. at 3. The amended complaint does not elucidate how much was stolen or who ultimately received the stolen funds. The amended complaint does allege, however, that in order to avoid getting caught, Halliburton and Huang kidnapped Carlton and held him hostage in Arizona. Amend. Compl. at 5-6.

The amended complaint alleges that Carlton died, but it does not identify when. *See* Amend. Compl. at 8.[2] Camille died at some unspecified point prior to Carlton. *See* Amend. Compl. at 4-5. Carlton's home was not part of the estate, as it had been previously transferred to Camille. Amend. Compl. at 3, 6. The validity of Carlton's will and the division of his assets was approved by the Westchester County Surrogate's Court. Amoruso Ex. D (Dkt No. 51-4).

On February 18, 2016, Plaintiffs filed a *pro se* complaint. Dkt No. 1. The defendants moved to dismiss Plaintiffs' complaint. Dkt Nos. 24, 30. The Court then *sua sponte* provided Plaintiffs with leave to amend their complaint in response to the motions. Dkt No. 36. On May

---

[2] A probate proceeding record provided by the Amoruso Defendants suggests that Carlton died on March 31, 2015. Amoruso Ex. D (Dkt No. 51-4). Although the Court may be able to take judicial notice of these probate proceedings, *see AQ Consulting WLL v. Branca*, No. 10 Civ. 7496 (AKH), 2011 WL 240812, at *1 (S.D.N.Y. Jan. 19, 2011), out of an abundance of caution, the Court does not rely on the probate proceedings because they are outside the four corners of the complaint.

3

22, 2016, Plaintiffs filed a first amended complaint. Dkt No. 42. Defendants renewed their motions to dismiss, with the Amoruso Defendants filing their motion to dismiss on June 10, 2016, *see* Dkt No. 50, and Defendants Halliburton, Huang, and Posner filing their motion to dismiss on June 22, 2016, Dkt No. 58. The Court now resolves both of these motions to dismiss.

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

A court evaluating a motion under Rule 12(b)(6) must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (citations omitted). This tenet, however, does not apply to "legal conclusions" in a complaint, and "mere conclusory statements" do not satisfy the pleading standards. *Iqbal*, 556 U.S. at 678. Even when a plaintiff provides substantial factual detail, dismissal is appropriate if "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

"Where, as here, the complaint was filed *pro se*, it must be construed liberally to raise the strongest arguments it suggests." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (citations, quotation marks, and brackets omitted). "Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Id.* A court may dismiss a *pro se* complaint if it is clear that the plaintiffs cannot demonstrate a set of facts that would entitle them to relief. *Weixel v. Bd. of Educ.*, 287 F.3d 138, 145 (2d Cir. 2002).

4

## III. Discussion

Plaintiffs' *pro se* amended complaint fails to clearly assert any particular causes of action. Reading the amended complaint liberally, the Court infers that Plaintiffs are attempting to bring a civil Racketeer Influenced and Corrupt Organizations Act ("RICO") cause of action and a § 1983 constitutional claim. *See* Amend. Compl. at 1. As explained below, the Court concludes that the amended complaint fails to state any claim upon which relief can be granted, and the Court accordingly grants both motions to dismiss. *See* Fed. R. Civ. P. 12(b)(6).

### A. Plaintiffs Have Not Stated a Civil RICO Claim

Plaintiffs appear to bring a civil RICO cause of action. They allege that the five defendants formed an "enterprise" whose "common purpose" was to "defraud[] Carlton Lynch and defraud[] the Plaintiffs." Amend. Compl. at 1. The Amoruso Defendants contributed to this scheme by "illegally notarizing the deed to Carlton Lynch's house, mailing the illegally notarized deed and setting up various trusts with money stolen from Carlton Lynch." Amend. Compl. at 2-3. Defendant Halliburton assisted by stealing money from Carlton and kidnapping him in order to avoid getting caught. Amend. Compl. 5. Defendant Huang contributed by helping the Amoruso Defendants "forg[e] the deed to Carlton Lynch's house" and by committing perjury in Arizona probate court in order to hide the alleged RICO conspiracy. Amend. Comp. at 6. Defendant Michael Posner assisted by being "involved in the illegal negotiations to sell Carlton Lynch's house" and by "bribing" Plaintiffs "in exchange for dropping their Arizona probate case." Amend. Compl. at 8.

To state a claim for a civil RICO violation, Plaintiffs must plausibly allege three elements. They must demonstrate: "(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section

5

1962." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (citations and quotation marks omitted). Plaintiffs' allegations falter at every step.

### 1. Plaintiffs Do Not Plausibly Allege a Substantive RICO Violation

In order to bring a civil RICO lawsuit, Plaintiffs must demonstrate a violation of the RICO statute. *Sykes v. Mel S. Harris and Assocs. LLC*, 780 F.3d 70, 83 (2d Cir. 2015). This means that Plaintiffs must plausibly allege "that a defendant, through the commission of two or more acts constituting a pattern of racketeering activity, directly or indirectly participated in an enterprise, the activities of which affected interstate or foreign commerce." *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001). Defendants argue that Plaintiffs have failed to plausibly allege "a pattern of racketeering activity." Amoruso Mot. at 11-12 (Dkt No. 53). The Court agrees.

#### a. Plaintiffs Do Not Plausibly Allege Two or More Predicate Acts

In order to demonstrate a "pattern of racketeering activity" under the RICO statute, Plaintiffs must plausibly allege the commission of at least two "predicate acts." *See* 18 U.S.C. § 1961(5); *DeFalco*, 244 F.3d at 306. "The RICO statute sets forth an exhaustive list of [predicate] acts that qualify as 'racketeering activity' under the statute." *Aronov v. Mersini*, No. 14–cv–7998 (PKC), 2015 WL 1780164, *3 (S.D.N.Y. Apr. 20, 2015); *see also* 18 U.S.C. § 1961(1). Although the amended complaint never clearly identifies any predicate acts, the Court liberally construes the complaint as asserting the following predicate acts: (1) kidnapping, (2) mail fraud, (3) bribery, (4) theft, and (5) perjury. As explained below, kidnapping is the only plausibly alleged predicate act contained in the amended complaint.

Defendants correctly identify that Plaintiffs have failed to plead "mail fraud" with the appropriate level of specificity. Amoruso Mot. at 15-16; Halliburton Mot. at 6 (Dkt No. 59). Allegations of mail fraud, including allegations under 18 U.S.C. § 1961(1), are subject to the

heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Rule 9(b) requires a party alleging "fraud or mistake" to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). In order to satisfy this standard, a plaintiff asserting mail fraud must identify "the contents of the communications, who was involved, and where and when they took place, and explain why they were fraudulent." *Spool*, 520 F.3d at 185 (alterations and citation omitted). Plaintiffs contend that Amoruso and Huang committed mail fraud by mailing the "illegally notarized deed." Amend. Compl. at 3, 6. But the amended complaint is devoid of other factual detail, such as when the deed was forged, the date on which the deed was purportedly mailed, to whom the deed was mailed, where the deed was mailed from, or what exactly was fraudulent or illegal about the deed. The conclusory allegation that a falsified deed was mailed, without any other factual content, does not describe the alleged fraud "with particularity." Fed. R. Civ. P. 9(b).

Plaintiffs' allegation of "bribery" also does not constitute a predicate act because Plaintiffs' allegations, even if true, fail to state a violation of either federal or state bribery statutes. In order for bribery to constitute a predicate act under 18 U.S.C. § 1961(1), the acts alleged must violate either 18 U.S.C. § 201 or constitute conduct "chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1). Here, Plaintiffs allege that Posner, an attorney for Camille Lynch's stepchildren, "illegally offered Plaintiff's [*sic*] a bribe in exchange for dropping their Arizona probate case." Amend. Compl. at 8. Such behavior is not illegal under federal law, as 18 U.S.C. § 201 only prohibits bribing "public officials," not private individuals such as Plaintiffs. *See* Padideh Ala'i, *Civil Consequences of Corruption in International Commercial Contracts*, 62 Am. J. Comp. L. 185, 188 (2014) ("[T]here is no federal statute criminalizing commercial or private-sector bribery.") Arizona

law[3] also prohibits bribery, but only of "public officials" or in the context of "commercial bribery" (i.e., bribing an employee in order to influence an employer). *See* Ariz. Rev. Stat. §§ 13-2602, 13-2605, 13-2606. Again, Plaintiffs are not public officials, nor did Attorney Posner attempt to "bribe" them in their capacity as employees. Far from describing illegal bribery, Plaintiffs' allegations suggest that Attorney Posner was merely attempting to settle a pending lawsuit, behavior that is perfectly legal. For these reasons, bribery, like mail fraud, cannot constitute a predicate act for Plaintiffs' asserted RICO claim.

Plaintiffs other two allegations do not fall within 18 U.S.C. § 1961(1)'s list of qualifying predicate acts. For example, Plaintiffs contend that the defendants are guilty of "stealing all of Carlton Lynch's money." Amend. Compl. at 3. As the Second Circuit has recognized, however, "[o]rdinary theft offenses and conspiracies to commit them are not among the predicate activities defined in 18 U.S.C. § 1961(1)." *Spool*, 520 F.3d at 184. Similarly, Plaintiffs allege that Defendant Huang committed perjury by making a number of false statements during an Arizona court hearing. Amend. Compl. at 6. Like theft, perjury does not qualify as a "predicate act." *See* 18 U.S.C. § 1961(1); *Snyder v. U.S. Equities Corp.*, No. 12–CV–6092 CJS, 2014 WL 317189, at *8 (W.D.N.Y. Jan. 28, 2014) ("Congress did not included perjury as one of the enumerated RICO predicate offenses.").

In sum, the only allegation that plausibly alleges a predicate act for purposes of a RICO violation is Plaintiffs' claim that Defendant Halliburton kidnapped Carlton. Amend. Compl. at 5-7; *see* 18 U.S.C. § 1961(1) (defining "racketeering activity" to include "any act or threat involving . . . kidnapping"). A RICO violation, however, requires *at least* two predicate acts, and even then two acts might not be sufficient. *DeFalco*, 244 F.3d at 306 ("Although at least

---

[3] Plaintiffs appear to contend that the act of bribery occurred in Arizona. Amend. Compl. at 8. For this reason, the Court assumes that Arizona state law applies.

8

two predicate acts must be present to constitute a pattern, two acts alone will not always suffice to form a pattern.") Because Plaintiffs plausibly allege only one predicate act, their RICO claim fails as a matter of law.

### b. Plaintiffs' Allegations Do Not Satisfy the "Continuity" Requirement

Even if Plaintiffs had plausibly alleged two predicate acts, they would also need demonstrate "continuity" of the "pattern of racketeering activity." *Spool*, 520 F.3d at 183. The Court concludes that the allegations here are insufficient to establish continuity.

A substantive RICO violation requires a showing that the defendants' predicate acts "either amount to or pose a threat of continuing criminal activity." *Id.* (brackets omitted) (quoting *Cofacrèdit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999)). The Supreme Court has identified two ways a plaintiff can satisfy this requirement. A plaintiff may demonstrate "an 'open-ended' pattern of racketeering activity," meaning that the racketeering acts "pose[] a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." *Id.* (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989)). Alternatively, Plaintiffs can "show[] a 'closed-ended' pattern—a series of related predicate acts extending over a substantial period of time." *Id.*

This is clearly not a case of "open-ended" continuity. All of Plaintiffs' allegations revolve around Defendants' purported scheme to steal Carlton Lynch's home and property. Carlton died at some point not specified in the complaint. *See* Amend. Compl. at 8. Because the enterprise's only alleged goal — defrauding Carlton out of his property — naturally ceased upon Carlton's death, the alleged racketeering activity does not "pose[] a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." *Spool*, 520 F.3d at 183.

The Court also concludes that Plaintiffs' allegations are insufficient to demonstrate "close-ended" continuity. Courts employ a multi-factor test when determining whether the "predicate acts extend[ed] over a substantial period of time," i.e. whether "close-ended" continuity exists. *Id.* The most important factor is the length of the purported RICO predicate activity, as "closed-ended continuity is primarily a temporal concept." *Id.* at 184. Nonetheless, factors such as "the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes" may also be relevant. *DeFalco*, 244 F.3d at 321.

These factors all cut against a finding of close-ended continuity in this case. The amended complaint does not state exactly how long the alleged racketeering activity occurred, but the Court infers from the allegations that it lasted just over two years.[4] The Second Circuit has "never held a period of less than two years to constitute a 'substantial period of time'" for purposes of closed-ended continuity. *Spool*, 520 F.3d at 184 (quoting *Cofacrèdit*, 187 F.3d at 242). The allegations in this case come very close to this short time period, thus suggesting that continuity is lacking.

Furthermore, all of the other relevant factors also suggest that continuity is lacking. For example, Plaintiffs' amended complaint identifies only a limited number of participants (two of Carlton's stepchildren, their attorney, and Carlton's attorney) and only one direct victim (Carlton). *See DeFalco*, 244 F.3d at 321 (noting that "the number of both participants and victims" is relevant to closed-ended continuity analysis). Additionally, Plaintiffs allege only one scheme: an attempt to steal Carlton's property, including both his house and other personal

---

[4] Plaintiffs allege that "Michael Lynch had full rights to his father's property" as of "February 2013." Amend. Compl. at 1. The amended complaint does not allege exactly when Carlton Lynch died, but it must have been before February 18, 2016, the date on which Plaintiffs filed this lawsuit. Dkt No. 1. The underlying probate proceedings suggest that Carlton died on March 31, 2015. Amoruso Ex. D. The Court thus infers that the alleged RICO activity lasted slightly over two years. The RICO activity may have lasted over an even shorter time period, as Plaintiffs allege that the defendants "sold Carlton Lynch's house in January of 2014." Amend. Compl. at 6.

10

property. *See id.* (noting that "the presence of separate schemes" is relevant to closed-ended continuity). Courts have refused to find a RICO violation in cases like this, where the plaintiffs "attempt to transform [a] single scheme of limited duration into a RICO enterprise." *Ozbakir v. Scotti*, 764 F. Supp. 2d 556, 570 (W.D.N.Y. 2011); *see also Stein v. N.Y. Stair Cushion Co., Inc.*, No. 04–CV–4741 DRHETB, 2006 WL 319300, at *8 (E.D.N.Y. Feb. 10, 2006) (dismissing RICO cause of action where plaintiffs alleged "a single scheme of narrow scope, including one victim and a limited number of related participants"); *FD Prop. Holding, Inc. v. U.S. Traffic Corp.*, 206 F. Supp. 2d 362, 372 (E.D.N.Y. 2002) ("Courts in the Second Circuit have generally held that where the conduct at issue involves a limited number of perpetrators and victims and a limited goal, the conduct is lacking in closed-ended continuity. This is the case even when the scheme's duration exceeds one year" (collecting cases)). Plaintiffs' failure to allege the requisite continuity is yet another reason that Plaintiffs' RICO claim fails as a matter of law.

### 2. Plaintiff Scarola Fails to Allege a Cognizable Injury

Even if the plaintiffs had sufficiently pled a violation of the RICO statute, the Court would nonetheless dismiss the RICO cause of action brought by Plaintiff Scarola because Scarola has failed to plead a cognizable injury. *See* Amoruso Mot. at 9-10; Halliburton Mot. at 6, 8.

To state a civil claim under the RICO statute, a plaintiff must plausibly allege an injury to "business or property." *Baisch v. Gallina*, 346 F.3d 366, 372 (2d Cir. 2003); *see also* 18 U.S.C. § 1964(c). Michael satisfies this requirement by alleging that Defendants' purported racketeering activity prevented him from obtaining his rightful title to Carlton's house. Amend. Compl. at 2. Scarola, however, never asserts that she had any interest in Carlton's home or any of his other property. Nor could Scarola make such an allegation, given that the will approved

11

by the Westchester County Surrogate's Court states that all of Carlton's property was to be divided among his six children (not his nieces or nephews), and res judicata would bar Scarola from challenging the validity of this will. Amoruso Ex. D; *Lamica v. LaPierre*, No. 5:05-CV-964 (FJS/GJD), 2006 WL 3423861, at *3 (N.D.N.Y. Nov. 28, 2006).

The only injuries Scarola alleges are of an emotional or mental nature. *See, e.g.*, Amend. Compl. at 3 ("Plaintiff Scarola suffered a loss of intangible property."); *id.* at 7 ("Plaintiffs suffered sleepless nights and anxious days worrying about Carlton Lynch."); *id.* ("Plaintiff Scarola suffered and was so tortured at the kidnapping [of Carlton Lynch] that she got on a plane, went to Arizona and found her uncle in urine soaked pants on two separate occasions."). "RICO only protects injury to the plaintiff's business or property." *Westchester Cty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 612 (S.D.N.Y. 2015); *see also* 18 U.S.C. § 1964(c) ("Any person injured in his *business or property* by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court." (emphasis added)). "Personal damages, emotional damages, and physical damages," such as those alleged by Scarola, "are insufficient." *Astorino*, 137 F. Supp. 3d at 612; *see also Gross v. Waywell*, 628 F. Supp. 2d 475, 488 (S.D.N.Y. 2009) (noting that "personal or emotional damages do not qualify" as "injury to 'business or property'"). Because Scarola does not, and cannot, plead a cognizable injury as a result of Defendants' alleged racketeering activity, the RICO cause of action must be dismissed as to her.

### 3. The Alleged Racketeering Activity Did Not Proximately Cause Plaintiffs' Injuries

Finally, Defendants contend that Plaintiffs' RICO cause of action fails on proximate cause grounds. Amoruso Mot. at 14-15. Once again, the Court agrees.

In order to satisfy the third element of a civil RICO claim, Plaintiffs must plausibly allege that their injuries were "proximately caused by a pattern of racketeering activity violating 18 U.S.C. § 1962 or by individual RICO predicate acts." *Baisch*, 346 F.3d at 373 (brackets and citation omitted); *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 460-61 (2006)). Courts have strictly construed the proximate cause requirement in civil RICO cases. Proximate cause is lacking, and a plaintiff therefore does not have standing to assert a RICO claim, "if he suffered an injury that was indirectly (and hence not proximately) caused by the racketeering activity or RICO predicate acts." *Baisch*, 346 F.3d at 373. In general, a "direct causal connection" exists only for "the immediate victims of an alleged RICO violation." *Anza*, 547 U.S. at 460.

Here, all of Plaintiffs' allegations assert that Defendants defrauded *Carlton* out of his property. In other words, Carlton was the "immediate victim" of the RICO activity. To the extent Plaintiffs suffered any alleged injury, it was only an "indirect" one; by stealing Carlton's property, Defendants reduced the amount of money Plaintiffs (and really, only Michael) would be entitled to upon Carlton's death. Such an indirect injury is insufficient to convey standing to bring a civil RICO claim. *See At the Airport v. ISATA, LLC*, 438 F. Supp. 2d 55, 62 (E.D.N.Y. 2006); *Tsipouras v. W&M Props., Inc.*, 9 F. Supp. 2d 365, 367 (S.D.N.Y. 1998) ("Where as here, a plaintiff alleges that he has been harmed by the defendant's acts towards another, the claim is too remote and plaintiff cannot recover.").

For all of these reasons, the Court agrees with the Defendants that Plaintiffs' RICO cause of action must be dismissed.

**B.     Plaintiffs Fail to State a Viable "Civil Rights" Claim**

Finally, Defendants seek to have Plaintiffs' "civil rights" claim dismissed on two grounds: (1) Plaintiffs' allegations are too conclusory, and (2) Plaintiffs lack standing. Amoruso Mot. at 18. The Court agrees with both arguments.

Plaintiffs' "civil rights" cause of action is far too conclusory. Their allegations are limited to a single sentence, that "[u]nder the U.S. Constitution, Carlton Lynch's civil rights were violated by all defendants as he suffered from a severe disability; severe Alzheimer's." Amend. Compl. at 2. Plaintiffs fail to provide any factual detail, such as exactly what "civil rights" were violated, how the civil rights were violated, who committed the violations, or when the violations occurred. "[M]ere conclusory statements" such as this cannot survive a motion to dismiss. *Iqbal*, 556 U.S. at 678.

Even if Plaintiffs had included sufficient factual allegations in their amended complaint, the Court would nonetheless dismiss the civil rights cause of action on standing grounds. "A party may not assert a civil rights claim on behalf of another; each party must establish that he or she was personally deprived of rights or privileges secured by the Constitution." *Casino v. Feilding*, No. 13–CV–5095 (SJF) (GRB), 2013 WL 5970694, *4 (E.D.N.Y. Nov. 8, 2013) (citation omitted). Plaintiffs never assert that *their* civil rights were violated; they only allege that "Carlton Lynch's civil rights were violated." Amend. Compl. at 2. In a strikingly similar case, the Second Circuit held that a plaintiff lacked "standing to challenge constitutional deprivations alleged to have been experienced by his mother—among other things, the appointment of her conservator, the freezing of her accounts, and the taking of her property." *Collins v. W. Hartford Police Dep't*, 324 F. App'x 137, 139 (2d Cir. 2009). Similarly, Plaintiffs

lack standing to challenge the alleged constitutional violations suffered by Carlton, their father and uncle.[5]

## IV. Conclusion

For the reasons provided above, the Court grants Defendants' motions to dismiss for failure to state a claim upon which relief can be granted. The amended complaint is dismissed with prejudice, as amendment would be futile and cause unnecessary delay. *See Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001); Dkt No. 36 (order from this Court granting Plaintiffs leave to amend in response to the motion to dismiss and stating that failure to cure any defects "may well constitute a waiver of the Plaintiffs' right" to amend the complaint).

This resolves Docket Numbers 50, 58. The Clerk of the Court is directed to close the case.

SO ORDERED.

Dated: Feb. 8, 2017
New York, New York

_____
ALISON J. NATHAN
United States District Judge

---

[5] Plaintiffs' amended complaint borders on incomprehensible. *See* Dkt No. 42. When deciding this motion to dismiss, the Court has liberally construed the complaint as raising RICO and civil rights violations. *See Walker*, 717 F.3d at 124. To the extent that Plaintiffs amended complaint raises other causes of action, the Court denies them as unintelligible and for failure to state a claim upon which relief can be granted. *See Trice v. Onondaga Cty. Justice Ctr.*, 124 F. App'x 693 (2d Cir. 2005) (affirming dismissal of complaint as unintelligible); *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) (noting that dismissal is appropriate for a complaint that "is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised" (citation omitted)).